**CLAIROL INCORPORATED, Petitioner,**

v.

**FEDERAL TRADE COMMISSION,
Respondent.**

**No. 21235.**

United States Court of Appeals
Ninth Circuit.

April 2, 1969.

Gilbert H. Weil (argued) of Weil & Lee, New York City, Landels, Ripley, Gregory & Diamond, San Francisco, Cal., for petitioner.

Emerson Elkins, Washington, D. C. (argued), James McI. Henderson, Gen. Counsel, J. B. Truly, Asst. Gen. Counsel, Washington, D. C., for respondent.

Before CHAMBERS, HAMLEY and MERRILL, Circuit Judges.

MERRILL, Circuit Judge:

Petitioner, Clairol Incorporated, seeks review of a cease and desist order entered by the Federal Trade Commission. The Commission has found that in two respects Clairol, in making promotional payments, discriminates between competing customers in violation of § 2(d) of the Clayton Act as amended by the Robinson-Patman Act, 15 U.S.C. § 13(d).[1]

---

1. § 2(d) provides in full:
   "It shall be unlawful for any person engaged in commerce to pay or contract for the payment of anything of value to or for the benefit of a customer of such person in the course of such commerce as compensation or in consideration for any services or facilities fur-

It has ordered Clairol to cease and desist from such discrimination.

## I. DISCRIMINATIONS BETWEEN DIRECT-PURCHASING BEAUTY SALON CUSTOMERS

The issue here presented is whether Clairol's beauty salon customers "compete in the distribution" of Clairol products. Clairol contends that such customers do not distribute Clairol products; that "distribution" as used in § 2(d) means "resale;" that beauty salons do not sell Clairol products but themselves consume them in connection with the service they perform for their customers.

Clairol emphasizes that salons are service rather than sales establishments; that a salon patron pays a single charge for the services rendered and that no separate charge is made for the Clairol product used; that generally the cost of the Clairol product is a de minimis factor in the single charge made, which is dependent almost exclusively on the service performed and the skill of the operator; that the product is entirely consumed in the operation and the customer walks out with no part of it left (distinguishing Corn Products Refining Co v. FTC, 324 U.S. 726, 65 S.Ct. 961, 89 L.Ed. 1320 (1945) in this respect).

The Commission does not contend for a wider meaning of "distribution" than "resale." It contends that the beauty salons do in fact resell Clairol products within the meaning of § 2(d).

■ We agree. In our view the facts emphasized by Clairol do not square with the congressional purpose and cannot be regarded as appropriate tests for a § 2(d) sale in the light of that purpose.

Here the service rendered by the salon is not a generalized service pro-vided alike to all comers and the product is not consumed by the salon in performing or equipping itself to perform such a service. The service rather is individualized and the product is used directly on the customer herself. The products are not used in bulk but in individual packages such as would be secured in a drugstore sale. The product used is chosen to meet the individual needs or desires of the salon's customer and the choice is the customer's. It is the customer, and not the salon, who is the ultimate consumer. The fact that the product is also wholly consumed on salon premises does not alter this fact.[2]

That this is a proper conclusion is reinforced by the nature of the promotional payment involved. It was reimbursement by Clairol for sums spent by certain large beauty salon chains on advertising. The advertising was not directed at salon customers of Clairol but at the public—the potential customers of the salon—and promoted both the advertising salon and the Clairol products it offered. Its aim was to persuade the reader to go to the salon for service and to ask for Clairol products in connection with that service.

The very nature and purpose of such advertising requires rejection of the concept that the salon was the consumer. The target of the persuasion was the potential customer of the salon and the persuasion, so far as Clairol was concerned, was to consume its products.

It was precisely this sort of discrimination that § 2(d) was intended to reach. "The Robinson-Patman Act was enacted in 1936 to curb and prohibit all devices by which large buyers gained discriminatory preferences over smaller ones by virtue of their greater purchasing power." FTC v. Henry Broch & Co., 363 U.S. 166, 168, 80 S.Ct. 1158, 1160,

nished by or through such customer in connection with the processing, handling, sale, or offering for sale of any products or commodities manufactured, sold, or offered for sale by such person, unless such payment or consideration is available on proportionally equal terms to all other customers competing in the distribution of such products or commodities."

2. See Mueller v. United States, 262 F.2d 443, 447–448 (5th Cir. 1958).

4 L.Ed.2d 1124 (1960). In FTC v. Fred Meyer, Inc., 390 U.S. 341, 350–351, 88 S.Ct. 904, 909, 19 L.Ed.2d 1222 (1968), the Court noted:

"One of the practices disclosed by the Commission's investigation was that by which large retailers induced concessions from suppliers in the form of advertising and other sales promotional allowances. The draftsman of the provision which eventually emerged as § 2(d) explained that, even when such payments were made for actual sales promotional services, they were a form of indirect price discrimination because the recipient of the allowances could shift part of his advertising costs to his supplier while his disfavored competitor could not."

We conclude that the Commission did not err in determining that beauty salon customers competed in distribution of Clairol products.

## II. DISCRIMINATIONS BETWEEN DIRECT-PURCHASING RETAIL CUSTOMERS AND WHOLESALERS WHO RESELL TO RETAILERS COMPETING DIRECTLY WITH FAVORED RETAILERS

Before the Commission the dispute focused on the Commission's contention that § 2(d) reaches to competition between retailers and wholesalers. Clairol contended that § 2(d) competition was limited to that between customers at the same functional level—retailer versus retailer and wholesaler versus wholesaler. The Commission, in its cease and desist order, adhered to its view.

The dispute upon this point of construction has now been resolved in FTC v. Fred Meyer, Inc., *supra*, 390 U.S. 341, 88 S.Ct. 904 (1968). The Commission, there contending for the same construction, was held to be in error. "On the facts of this case, § 2(d) reaches only discrimination between customers competing for resales at the same functional level." 390 U.S. at pages 348–349, 88

S.Ct. at page 908. However, the Commission was held to be correct in finding violation. The Supreme Court held that the retail customer of a direct-purchasing wholesaler was, for purposes of § 2(d), to be treated as the customer of the manufacturer. It was the competition between that retailer and the favored retailer that fell within § 2(d). It was to that retailer, rather than to the wholesaler customer, that proportionally equal promotional payments must be made available.

Thus, on this review, the Commission concedes that its cease and desist order cannot be affirmed in its present form, while Clairol concedes that some form of order is proper. The dispute before us is as to the definition of those retailers entitled to equal treatment.

Clairol products often reach the ultimate consumer after passing through several levels of wholesalers and distributors. Clairol contends that only those retailers buying from direct-buying wholesalers are entitled to protection. It points out that this was as far as *Meyer* went. The Commission contends that all retailers in competition with direct-buying retailers are entitled to protection regardless of the number of intervening levels of wholesalers or distributors.

We agree with the Commission that its position is in accord with the spirit of the *Meyer* holding. Frustration of the purpose of the Robinson-Patman Act, which *Meyer* sought to avoid, would otherwise occur here for the very reason set forth in *Meyer*.

In support of its position Clairol points out the practical difficulty of making promotional allowances available to retailers many levels removed from it. The Supreme Court was aware of the fact that problems of this sort were presented. Justice Harlan, in dissent, discussed them. The Court suggested that Commission rules and regulations might provide solution.[3]

---

**3.** The Commission has attempted this already in its Amended Guides for Advertising Allowances and Other Merchandising Payments and Services, 34 F.R.

The fact that Clairol's problems may be more complex than those of Meyer's suppliers does not call for a different result. The purpose of the Robinson-Patman Act was to strike down all discriminatory promotional schemes of this sort. If the form of a promotional arrangement is such that discrimination is unavoidable that fact does not render the arrangement immune; rather it renders it unacceptable.

The Commission order is modified to read as follows:

"IT IS ORDERED that respondent Clairol Incorporated, its officers, agents, representatives and employees, directly or indirectly, through any corporate or other device, in or in connection with the offering for sale, sale or distribution of its products, in commerce, as 'commerce' is defined in the Clayton Act, as amended, do forthwith:

1. Cease and desist from paying or contracting to pay anything of value to or for the benefit of any retailer customer engaged in the resale of respondent's hair care products to home use consumers, as compensation or consideration for any services or facilities furnished by or through such customer in connection with the processing, handling, sale or offering for sale of such products, unless such payment or consideration is available on proportionally equal terms to all other retailer customers of respondent, including retailer customers who do not purchase directly from respondent, who compete with the favored retailer customer in the distribution of such products to consumers for home use.

2. Cease and desist from paying or contracting to pay anything of value to or for the benefit of any customer engaged in rendering hair care services, in the course of which such customer uses respondent's hair care products, for advertising services furnished by or through such customer in the promotion of such products, unless such payment or consideration is available on proportionally equal terms to all other beauty salon customers of respondent, including beauty salon customers who do not purchase directly from respondent, who compete with the favored beauty salon customer in the rendering of hair care services and the use of respondent's hair care products."

4926, March 6, 1969; see § 240.3(b) [Guide 3]:

" 'Competing customers' are all businesses that compete in the resale of the seller's products of like grade and quality at the same functional level of distribution regardless of whether they purchase direct from the supplier or through some intermediary.

*Example 1.* A manufacturer sells to some retailers directly and to others through wholesalers. Retailer 'X' purchases the manufacturer's products from a wholesaler and resells some of it to retailer 'Y'. Retailer 'X' is a customer of the manufacturer. *Retailer 'Y' is not a customer unless the fact that he purchases the manufacturer's product is known to the manufacturer.*" (Emphasis added)

By placing the burden on retailer "Y" to inform the manufacturer the onerous aspect of the requirement is removed. The manufacturer need only hold out proportionately equal benefits to those indirect-buying retailers that make their existence known to the manufacturer.